Filed 11/9/23  P. v. Suarez CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> JUNIOR RAMIRO SUAREZ, <br><br> Defendant and Appellant. | F084821 <br><br> (Super. Ct. No. CR-18-005416) <br><br><br> **OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Stanislaus County.  Robert B. Westbrook, Judge.

Sylvia W. Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

Junior Ramiro Suarez was convicted in March 2022 by jury as charged in count 1 of the premeditated murder of Domonique L. (Pen. Code,[1] §§ 187, subd. (a), 189), with

---

[*]     Before Smith, Acting P. J., Meehan, J. and De Santos, J.

[1]     All further statutory references are to the Penal Code unless noted otherwise.

personal discharge of a firearm resulting in great bodily injury or death (§ 12022.53, subd. (d)); in count 2 of discharge of a firearm into a vehicle occupied by Shanae Brown (§ 246), with personal use of a firearm (§ 1203.06, subd. (a)(1)); and in count 3 of unlawful possession of a firearm (§ 29800, subd. (a)(1)). In a bifurcated proceeding, Suarez waived his right to a trial by jury and the trial court found true the allegation that Suarez had a prior 2012 conviction for assault with a firearm (§ 245, subd. (b)), which was also found to be a serious felony (§ 667, subd. (a)) and a strike (§ 1170.12).

Suarez was sentenced to an aggregate term of 91 years and four months in prison: on the count 1 premeditated murder, the term of 25 years, doubled to 50 years based on the strike, plus 25 years for discharging a firearm resulting in death, plus a five-year prior serious felony conviction enhancement; on count 2, the middle term of five years, doubled, to be served consecutively to the indeterminate term; and on count 3, a consecutive subordinate term of one-third the middle term of eight months, doubled. A section 1202.4, subdivision (b) fine of $300 was imposed, along with a $300 section 1202.45 fine suspended unless parole is revoked. In addition, a section 1465.8 court security fee of $120 and a Government Code section 70373 criminal conviction assessment of $90 were imposed. Restitution pursuant to section 1202.4, subdivision (f) was reserved.

Suarez filed a timely notice of appeal. Appellate counsel has filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) indicating counsel has not been able to identify any arguable issues for reversal on appeal. Counsel asks the court to independently review the record for error as mandated by *Wende*. We offered Suarez the opportunity to file his own brief on appeal, but he has not responded.

We have examined the entire record and have not found any arguable issue on appeal. Accordingly, we affirm the judgment.

## STATEMENT OF THE FACTS

Brown and Lewis were in a long-term relationship and had a child together. Brown knew Lewis was a drug dealer and that he owned a firearm. According to Brown, on August 5, 2018, Lewis made acquaintance with a young Hispanic male ("Eric or Aaron") while Lewis waited in Brown's parked car as she shopped at Winco.

On August 12, 2018, Angel Contreras, using the name Eric or Aaron, contacted Lewis and requested to meet him later that day for a brokered drug deal.

At approximately 2:00 p.m. on August 12, 2018, Suarez was identified, along with two other males, Gabriel and Frank Avila, arriving at what was later determined to be Suarez's residence on Sutter Avenue in Merced. The property was equipped with a surveillance system on the eave outside the front door. The three all left about the same time.

At just before 5:00 p.m., a gold Pontiac SUV was parked at the gates to the Sutter Avenue property. Suarez is seen walking to a space between a parked pickup and a two-door sedan backed into a parking spot. Suarez ducked down toward the rear of the sedan and disappeared from camera view. Six seconds later, he stood back up, traced his steps back to the gate, patting his right waist area. Suarez then got into the Pontiac, which backed up and drove away.

Contreras made contact with Lewis that same day by phone right before 5:00 p.m. Lewis told Brown he was meeting the person he met previously at Winco, and Brown drove Lewis to the Arco gas station on I Street in Merced. Brown was under the impression they were there for Lewis to give Contreras a blunt and try out some weed. Brown testified that Lewis was not in possession of a firearm at the time, although she earlier told an officer that Lewis was possibly armed although she did not see a firearm.

Video surveillance from the AM/PM market at the gas station just after 5:00 p.m. on August 12, 2018, showed Suarez and Contreras walk into camera view from the right, just as Avila's gold Pontiac SUV drove into the gas pump area from the left and stop in

3.

position to face Brown's minivan. Suarez and Contreras walked over to the driver's door of Brown's minivan and gestured for Brown to roll down the window. The two looked into the minivan.

After a couple of seconds, Contreras followed Suarez around the front of the minivan to the front passenger door. Suarez put his left arm on the roof of the minivan and appeared to speak to the passenger. Brown testified that, as Lewis reached for his backpack on the rear seat, Suarez said "uh, no nigga" before Suarez and Contreras fired shots into the van. The video surveillance shows Suarez and Contreras producing handguns, Lewis raising his palm out the window and Suarez and Contreras reaching into the minivan and shooting Lewis. Brown drove the minivan away abruptly while Suarez and Contreras still had their arms inside the van's interior.

Suarez and Contreras chased the minivan for a few seconds and then turned left into an alleyway. Gabriel Avila, who had been in the idling Pontiac SUV facing the minivan, drove through the gas station and turned westbound into the alleyway. When officers responded to the AM/PM market where the shooting occurred, there was no visible physical evidence of a shooting. But they collected the video surveillance recordings from various camera angles.

Brown drove Lewis directly to the hospital, where he was moved to the trauma area.

In the meantime, Suarez and Contreras walked back to the Sutter Avenue property at 5:10 p.m. A short while later, the two left the property and turned northbound on foot on Sutter Avenue.

Lewis did not survive and an autopsy determined he died as the result of blood loss due to four through-and-through bullet wounds to the chest, abdomen, thigh and finger. Stippling indicated the shots were fired from very close range. Physical evidence confirmed Lewis was in the front passenger seat when shot. Three cartridge casings and two copper bullets were found in the minivan.

Contreras was arrested on August 14, 2018, and Suarez on August 21, 2018, both identified from the surveillance videos.

## DISCUSSION

As we have noted appellate counsel has filed a *Wende* brief and asks the court to review the record for error. To assist the court in its review, and in compliance with *Anders v. California* (1967) 386 U.S. 738 (*Anders*), appointed counsel directed this court's attention to the following possible issues counsel considered, but did not raise, as grounds for relief:

(1) Whether counsel was ineffective for failing to raise the lack of investigation by detectives regarding the gun Brown admitted the victim Lewis owned.

(2) Whether the prosecutor committed misconduct by misrepresenting the phone calls between Contreras and Lewis, who called whom.

(3) Whether the trial court erred in not properly instructing the jury on self-defense.

(4) Whether jury selection was proper as it originally commenced a year prior to trial, but did not go forward due to new evidence regarding Brown having committed perjury in the past.

We have reviewed the record as required by *Wende* and *Anders* and find no arguably meritorious issues, either among the issues suggested by appointed counsel or otherwise.

## DISPOSITION

The judgment is affirmed.